# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT G. SAENZ,<br><br>        Plaintiff,<br><br>   v.<br><br>A. FRANCO, et al.,<br><br>        Defendants. | Case No.: 1:23-cv-001303-BAM (PC)<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM<br><br>(ECF No. 18)<br><br>**FOURTEEN (14) DAY DEADLINE** |

      Plaintiff Robert G. Saenz ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  The Court screened Plaintiff's complaint, and Plaintiff was granted leave to amend.  Plaintiff's first amended complaint is currently before this Court for screening.  (ECF No. 18.)

**I.    Screening Requirement and Standard**

      The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915A(b).

1    A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at California State Prison, in Corcoran, California where the events in the complaint are alleged to have occurred. Plaintiff names as defendants: (1) A. Franco, correctional officer, Corcoran, and (2) S. Magallanes, correctional Lieutenant, Corcoran. Plaintiff alleges as follows.

In claim 1, Plaintiff alleges a violation of Due Process against A. Franco. Defendant Franco is assigned as the facility 4B disciplinary officer which entails serving prisoners with misconduct rule violation reports, crime incident reports, and notifies prisoners of criminal prosecution referrals and district attorney decisions. Defendant Franco is the investigative employee ("IE") for the prisoner, but when not accepted by the prisoner as the IE, she locates "the appropriate senior hearing officer (SHO) and despite the prisoners option for an alternative IE, Franco forces herself appointed." On June 7, 2022, Franco called for Plaintiff to report to the facility 4B program office. Franco advised Plaintiff that the Amador County District Attorney elected not to prosecute a case against Plaintiff. The written notice from the DA's office triggered CDCR's thirty (30) day time constraint to hear the rules violation report ("RVR"). This

2

time period is critical to the inmate's defense.  Plaintiff told Franco that he did not want her as an IE and elects an alternative, but she explains the process.  "You are now required to hand over the evidence, your defense statement, records that your [sic] going to use as evidence to the IE, to me."  Plaintiff said he did not want her and wanted an alternate IE.  Franco said she would speak to the SHO, and she will get appointed as the IE.  Plaintiff alleges a "three day wait was agreed to at that time" and Plaintiff handed over his entire work product.  There was an agreement that Franco would provide copies that same day.  Franco lied; copies were not provided and there was no regulation requiring the prisoner to hand over his work product.

The actions of Franco prejudiced the evidence presentation, a twenty seven (27) day wait left no time to prepare the defense.  On July 7, 2022, Franco as the appointed IE, gave the long over due copies to Plaintiff.  However, she lacked authority to make fact finding decisions, i.e., to deem irrelevant questions given to her for Plaintiff's witnesses.  Franco did just that, stating "the SHO did not make the relevancy determination, 'I did' and I also reviewed your exhibits, and found those irrelevant to the charged offense and threw them all into the nearest trash can."  She said she did not make copies of the exhibits. She destroyed all of the Plaintiff's case exhibits and waited 29 days to give Plaintiff the copies.  Plaintiff was without his work product and could not properly prepare his defense.

Franco violated Due Process and CDCR rules and policies.  An IE does not have authority to make fact finding decisions or destroy a prisoner's property.  The rule provides for confiscation and hold them pending appeal, the evidence belonged to Plaintiff, and it was not for her to decide whether admissible or not at the hearing.

The office of administrative law (OAL) prohibits the use of whimsical creations of rules that frustrate prisoner's right, such as Franco's actions.

Defendant was going to present "self-defense" as a defense statement.  The intruder's entry into Plaintiff's cell, then taking the stance to commit a violent act, blocked the sole exit out of the cell.  The weapon in the intruder's hand made the situation life or death to Plaintiff. Plaintiff acted quickly and disarmed the intruder, even with an active groin hernia, a large bulge in the area and painful condition, even walking.  Plaintiff's fear of Tuthill getting his hands on the

1  weapon is unthinkable.  At the end of the incident, Plaintiff was under the impression that Tuthill
2  had been stabbed.  California Penal Code 26 provides for necessary action to stop an act of
3  violence.  The SHO's IE representative destroyed evidence, photographs and portions of records
4  that demonstrated support for self-defense.  The SHO stopped Plaintiff from completing the
5  verbal argument.  The SHO's action, along with the IE's actions, shut down the self-defense
6  presentations.
7      As to Defendant Magallanes, Plaintiff alleges as follows.  Defendant E. Magallanes was
8  assigned the duties of the SHO for Plaintiff's RVR.  SHO duties entail review of the RVR, and all
9  supplemental reports and incident reports, photographs, individual involved officer reports,
10 medical evaluation reports and evidence.  If a prisoner waives an IE, the SHO can assign one for
11 his own use.
12     Defendant Franco sought to get herself appointed prior to Plaintiff's request in written
13 form reached the SHO's office.  A meeting of the minds occurred, otherwise Plaintiff would have
14 been granted his request for an alternate IE and a postponement.
15     On July 8, 2022, Plaintiff was instructed to report to the 4B facility program office.  Upon
16 arrival, the SHO conducted a pat-down body search.  While doing so, commented that he'd seen
17 and read the 602 Plaintiff had placed in the specialized box for prisoner CDCR inmate appeals for
18 a complaint against A. Franco. The SHO said that Plaintiff wanted a not guilty finding and that
19 his officer would not like that and that he takes these appeals, complaints seriously.  Plaintiff
20 feared that the SHO was voicing a prejudgment not in Plaintiff's interest and the evidence would
21 not have any effect on the decision.
22     The hearing began and Plaintiff inquired about his witnesses.  The SHO state "there will
23 be not witness testimony" or questions asked of them.  The SHO said that he had contacted the
24 reporting employee, Officer Brinton, through the IE, and he's not available for the hearing.
25     Plaintiff asked if the photographs could be brought up on the screen, "I've got something
26 important I want you to see."  The SHO said, I'm looking at the photos now.  Plaintiff asked to
27 see them and the SHO said yes, and what exactly are you looking for? And told Plaintiff to "come
28 around" to see the photos.  It was then that Plaintiff became aware that Tuthill (intruder) was not

1  stabbed, although he had some deep scratches as shown in the photos.  There was no medical
2  reports of surgical procedure or treatment commonly associated with stab wound.

3        The allegations are unclear and the Court will summarize what it can.[1]  Plaintiff asked if
4  Photographs 005 and 006 could be brought up and the SHO complied.  Plaintiff explained what
5  he believed to be the import of the photos.  When Tuthill entered the cell, Plaintiff stood at the
6  mid-cell immediately on the far side of the TV.  The fighting occurred in the area on the far side
7  of the toilet and at the end of both lower lockers/beds.  When Plaintiff swung the weapon, Tuthill
8  back up and tripped over the toilet and got up.  The point of photo 005 was to have the SHO
9  admit that no items were in the specific areas, which the SHO did.   Plaintiff contended that photo
10 003 was compromising when from the hook, a mask on a hook removed and placed in front of the
11 TV and the weapon moved from the boots, where Plaintiff had dropped it, to the upper locker.
12 Plaintiff contended that the photo 006 showed a dry erase maker that was bought into the cell "an
13 effort to raise an inference that the weapon's handle and the marker are of the same, thus, in 120,
14 construction of the weapon as completed by Plaintiff."  Plaintiff alleges that his due process was
15 violated because evidence was manufactured to change the outcome of evidence presented in a
16 judicial proceeding, "that success resulting in nonrestorable time credit loss."

17       Correctional Officer Brinton attempted to change the location of the incident from cell
18 120 to the C14 dayroom floor.[2]  Brinton, who sees Tuthill as "his porter," attempted to lessen his
19 porter's culpability by removing him from 120. Plaintiff then discusses an interview with the
20 5/1/21 watch commander, about an incident.

21       The SHO was told of the specific changes and the misconduct of Brinton.  When asked to
22 bring up on the screen, the SHO refused, became agitated, and "listened carefully to Plaintiff's
23 recitation of self defense presentation of defendant, solely heard 'I stabbed (assaulted Tuthill in
24 cell 120, my (single) cell) when Tuthill entered to kill me with an ice pick weapon.'"

25       The SHO said, "that's all I need to hear, you stabbed assaulted him."

---

[1] Plaintiff attached exhibits A-I to the Complaint.  The Court has reviewed these exhibits to clarify the allegations. For instance, Plaintiff's allegations mention a dry erase marker; the attached exhibits clarify that the weapon was constructed of a metal rod with a sharpened point, which had been attached to a white dry erase pen plastic handle.

[2] Officer Brinton is not named as a defendant in the first amended complaint.

The SHO found Plaintiff guilty and assessed 360 days' time credit loss, all non restorable credits and recommended a 2-year SHU term.

Plaintiff's Due Process was violated because the SHO's appointed IE deliberately destroyed evidence, the "SHO during the hearing has the items destroyed filed in his computer, refusing to access the evidence."

The accuser, Brinton, per policy is required to be physically present or available via speaker phone. The SHO denied Brinton as a witness because he was on vacation. In addition, the nurse, LVN Khashchuk's testimony was crucial for having performed a physical examination of both Plaintiff and Tuthill on May 1, 2021. On May 2, 2021, Tuthill looked for LVN Khashchuk to complain of more scratches. The SHO denied the witness without comment. The SHO did not listen to Plaintiff's defense presentation, the confession improperly stopped the hearing, found Plaintiff guilty and made a statement concerning the previous day's submission of a 602 appeal. Plaintiff contends that witnesses and evidence were improperly denied. Plaintiff raised the self-defense defense. The SHO lied that "CDCR does not recognize self defense in any form." Plaintiff had sought a postponement to properly prepare his presentations, but the postponement was denied. No reason was given. The SHO stopped the presentation upon hearing the small portion that gave the SHO reason to stop the hearing and proclaim a confession. The argument was being made that the self-defense statute provided a defense.

California courts have entered that a prisoner has self-defense. CDCR is governed by California statutes and Due Process requires obedience to the statutes.

Plaintiff also claims a First Amendment violation for retaliation. On June 8, 2022, Plaintiff reported to Facility 4 B program office. Upon arrival, Lt. E. Magallanes conducted a clothed body (pat down) search, a neck to ankle search. While conducting the search, and before entry into the building, Defendant Magallanes said, "I saw and read the 602 (CDCR 602 Inmate appeal form ) you wrote and put into the box (inmate appeal box for pick up) yesterday." (July 7, 2022). He further stated " so your [sic] going after my officer (c/o Franco) appeal no. 277428. Now you want me to find you not guilty my officer won't like that." The hearing was a one sided event. The evidence referred to during the verbal presentation was refused access. The computer

in front of the SHO did have the evidence in the e-file (SOMS and or ERMS) readily available to the SHO. Plaintiff's evidence was destroyed prior to the hearing by the SHO's IE, after the meeting and appointment. The comments and evidence refusal was retaliatory conduct, that placed fear of more and other consequences designed to punish Plaintiff for the serious staff complaint against Franco. At the end of the hearing, the SHO stated "you wrote the 602 on my officer, (the SHO focused his look beyond Plaintiff and Franco stood smiling at the door of the SHO's office.). "The outcome of the hearing was attributed to the July 7, 2022 appeal." "The reporting employee, c/o Brinton, was rewarded for his misconduct, a chilling factor." Witnesses were denied, lead to the 360 days of non-restorable time credits, "a chilling end."

As remedies, Plaintiff seeks monetary awards.

**III. Discussion**

    **A.  Federal Rule of Civil Procedure 8**

Pursuant to Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57; *Moss*, 572 F.3d at 969.

Plaintiff's complaint is relatively short, but it is not a plain statement of his claims. While identifies the specific claims, the allegations are disjointed and confusing as to the specific allegations of what happened.

    **B.  Fourteenth Amendment - Due Process**

        <u>Due Process and Disciplinary Hearing</u>

It appears Plaintiff claims a Due Process violation for being falsely accused of attempting to kill inmate Tuthill, and for his resulting disciplinary hearing and conviction.

Prisoners do not have a liberty interest in being free from false accusations of misconduct.

7

1    The filing of a false Rules Violation Report by a prison official against a prisoner is not a per se
2    violation of the prisoner's constitutional rights. *See Muhammad v. Rubia,* 2010 WL 1260425, at
3    *3 (N.D. Cal., Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no
4    constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which
5    may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded
6    procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a
7    claim under § 1983.") (citations omitted); *Harper v. Costa*, 2009 WL 1684599, at *2-3 (E.D. Cal.,
8    June 16, 2009), aff'd, 393 Fed. App'x 488 (9th Cir. 2010) ("Although the Ninth Circuit has not
9    directly addressed this issue in a published opinion, district courts throughout California ... have
10   determined that a prisoner's allegation that prison officials issued a false disciplinary charge
11   against him fails to state a cognizable claim for relief under § 1983."). Plaintiff fails to state a
12   claim for the purportedly false accusations.

13         The Due Process Clause of the Fourteenth Amendment protects prisoners from being
14   deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).
15   "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of
16   rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. The minimum
17   procedural requirements that must be met in such proceedings are: (1) written notice of the
18   charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of
19   the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact
20   finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the
21   prisoner to call witnesses in his defense, when permitting him to do so would not be unduly
22   hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner
23   where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563–71. As long
24   as the *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d
25   1415, 1420 (9th Cir. 1994), abrogated on other grounds by *Sandin v. Connor*, 515 U.S. 472
26   (1995). In addition, "some evidence" must support the decision of the hearing officer,
27   *Superintendent v. Hill*, 472 U.S. 445, 455 (1985), and the evidence must have some indicia of
28   reliability, *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987). The "some evidence" standard is

1    not particularly stringent, and the relevant inquiry is whether "there is any evidence in the record
2    that could support the conclusion reached...." *Hill*, 472 U.S. at 455–56 (emphasis added).

3        Plaintiff does not allege factual support that that his disciplinary action failed to comply
4    with the *Wolff* elements.  Plaintiff was given notice of the hearing and the charges, he was
5    permitted to argue his facts, he was told why witnesses were not available, and at the hearing, he
6    was permitted to view evidence and compare and contrast the evidence and demonstrated to the
7    hearing officer the inconsistencies in the evidence. *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.
8    Ct. 2293, 2301, 132 L. Ed. 2d 418 (1995) (*Wolff* factors are considered for discipline by prison
9    officials in response to a wide range of misconduct falls within the expected perimeters of the
10   sentence imposed by a court of law.)  Plaintiff has been unable to cure these deficiency.

11        Plaintiff alleges that Due Process was violated because his documents were destroyed, he
12   did not get the witnesses he wanted, he could not present self-defense, among various other
13   alleged violations.  However, Plaintiff is not entitled to the full panoply of rights as in a criminal
14   prosecution.  Plaintiff had sufficient notice of the charge, most of his evidence was contained in
15   the computer system, he was able to point out to the SHO the evidentiary "inconsistencies"
16   between the photos and reports.  He mainly complains that the SHO did not believe him.

17        Plaintiff also implies that the SHO was biased because Plaintiff had filed a 602 appeal,
18   which the SHO said he had read the day before the hearing. However, as explained below,
19   Plaintiff cannot state a cognizable claim because such claim is *Heck* barred.  *Edwards v. Balisok*,
20   520 U.S. 641, 648 (1997) (finding prisoner's claims for declaratory relief and money damages
21   "based on allegations of deceit and bias on the part of the decisionmaker... necessarily imply the
22   invalidity of the punishment imposed, [and are] not cognizable under § 1983.").

23   *Heck* Bar

24        Plaintiff is challenging his conviction on the disciplinary charge where he has lost credits.
25   It has long been established that state prisoners cannot challenge the fact or duration of their
26   confinement in a section 1983 action and their sole remedy lies in habeas corpus relief. *Wilkinson*
27   *v. Dotson*, 544 U.S. 74, 78 (2005). Often referred to as the favorable termination rule or the *Heck*
28   bar, this exception to § 1983's otherwise broad scope applies whenever state prisoners "seek to

invalidate the duration of their confinement-either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Wilkinson*, 544 U.S. at 81; *Heck v. Humphrey*, 512 U.S. 477, 482, 486–87 (1994); *Edwards v. Balisok*, 520 U.S. 641, 644 (1997). Thus, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81–82. Thus, the *Heck* bar applies in the prison disciplinary context if (1) the "defect complained of by [Plaintiff] would, if established, necessarily imply the invalidity of the deprivation of his good-time credits[,]" *Edwards v. Balisok*, 520 U.S. 641, 646, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Nonnette v. Small*, 316 F.3d 872, 875 (9th Cir. 2002), and (2) if the restoration of those credits "necessarily" would "affect the duration of time to be served[.]" *Muhammed v. Close*, 540 U.S. 749, 754 (2004) (per curiam).

Plaintiff's damage allegations expressly implicate the validity of his disciplinary conviction and of his confinement. The documents attached to Plaintiff's complaint reveal that he was assessed a loss of 360 days credit as a result of the conviction. (Doc. 13, p. 49.) Plaintiff may not pursue § 1983 damages for his claims until Plaintiff can prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487.

### C. First Amendment - Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408

10

F.3d 559, 567–68 (9th Cir. 2005). "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270. A plaintiff must plead facts showing that their "protected conduct was the substantial or motivating factor behind the defendant's conduct." *Id*. at 1271. To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1153 (E.D. Wash. 2014).

Under Plaintiff's allegations, the Court determines that the First Amendment claim is also *Heck* barred. Plaintiff alleges, or implies, he was convicted at his disciplinary hearing because the SHO learned Plaintiff had filed a 602 grievance against an officer. Success on this claim would necessarily imply the invalidity of the disciplinary conviction imposing the loss of credits. Under *Heck* and *Edwards*, Plaintiff's section 1983 action cannot proceed until his disciplinary conviction is invalidated.

**D. Title 15 claim**

Plaintiff alleges various actions were done in violation of Title 15 and CDCR policies.

To the extent that defendants have not complied with applicable state statutes or prison regulations, these deprivations do not support a claim under § 1983. Section 1983 only provides a cause of action for the deprivation of federally protected rights. *See*, *e.g.*, *Nible v. Fink*, 828 Fed. Appx. 463 (9th Cir. 2020) (violations of Title 15 of the California Code of Regulations do not create private right of action); *Nurre v. Whitehead*, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); *Prock v. Warden*, No. 1:13-cv-01572-MJS (PC), 2013 WL 5553349, at *11–12 (E.D. Cal. Oct. 8, 2013) (noting that several district courts have found no implied private right of action under title 15 and stating that "no § 1983 claim arises for [violations of title 15] even if they occurred."); *Parra v. Hernandez*, No. 08cv0191-H (CAB), 2009 WL 3818376, at *3 (S.D. Cal. Nov. 13, 2009) (granting motion to dismiss prisoner's claims brought pursuant to Title 15 of the California Code of Regulations); *Chappell v. Newbarth*, No. 1:06-cv-01378-OWW-WMW (PC), 2009 WL 1211372, at *9 (E.D. Cal. May 1, 2009) (holding that there is no private right of action under Title 15 of the California Code of Regulations).

///

**IV.     Conclusion and Recommendation**

For the reasons discussed, the Court finds that Plaintiff has failed to state a cognizable claim for relief. Despite being provided with the relevant legal standards, Plaintiff has been unable to cure the deficiencies in his complaint. Further leave to amend is not warranted. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, the Court HEREBY DIRECTS the Clerk of the Court to randomly assign a district judge to this action.

Further, for the reasons stated above, IT IS HEREBY RECOMMENDED that this action be dismissed for failure to state a cognizable claim upon which relief may be granted.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **February 29, 2024**                    /s/ *Barbara A. McAuliffe*
                                                                        UNITED STATES MAGISTRATE JUDGE